OPINION
Defendant-appellant, Roger Baker, appeals his conviction in the Clermont County Court of Common Pleas for rape, attempted rape, gross sexual imposition, and felonious sexual penetration. We affirm.
In December 1997, the Clermont County Department of Human Services ("CCDHS") received a report that D.E.,[1] then fifteen, had been molested by appellant. Deputy Barry Creighton, a CCDHS investigator and a deputy in the Clermont County Sheriff's Office, interviewed D.E. regarding the report. D.E. verified that appellant had molested her from 1990 to 1996, beginning when D.E. was eight years old.
On December 19, 1997, Dep. Creighton telephoned appellant to set up an interview in which to address the report against appellant. On December 22, 1997, appellant came to the CCDHS office where he was interviewed by Dep. Creighton. This interview was recorded on audiocassette. Although appellant was not placed under arrest at this time, Dep. Creighton informed appellant of his Miranda rights, and appellant waived these rights. Dep. Creighton informed appellant of the specific allegations of abuse, including that appellant had improperly fondled D.E., inserted his finger in her vagina, performed oral sex, and attempted intercourse with D.E.
Appellant denied the majority of the charges. Appellant did admit to four instances in which he had improperly fondled D.E. and one instance in which he inserted his finger in her vagina. Appellant denied similar accusations made by his cousin, D.B., who was sixteen when it was reported that appellant had molested her. The interview lasted about ten minutes, and appellant was allowed to leave at its conclusion.
On February 11, 1998, the Clermont County Grand Jury issued a ten count indictment against appellant. Counts One through Five charged appellant with gross sexual imposition, a violation of R.C. 2907.05(A)(4). Count One alleged that in 1990 or 1991, as part of continuing course of criminal conduct, appellant had committed in Brown County, Ohio, gross sexual imposition upon D.E., a child under thirteen years of age. Count Two alleged that appellant had committed the same offense in 1991 or 1992. Count Three alleged that the same offense had occurred in 1992 or 1993. Count Four alleged that appellant had committed the offense again in 1993 or 1994. Count Five alleged that appellant had committed the offense, in Clermont County, in 1995 or 1996.
The remaining five counts of the indictment alleged other sexual offenses. Count Six alleged that in 1990 or 1991, as part of a continuing course of criminal conduct, appellant performed cunnilingus upon D.E., a child under thirteen years old, in Brown County, a violation of R.C. 2907.02(A)(1)(b). Count Seven alleged that appellant committed the same crime in Clermont County in 1995 or 1996. Count Eight alleged that in 1995 or 1996, appellant had attempted to rape D.E., a child under thirteen years old, in Clermont County, a violation of R.C. 2923.02(A) and R.C.2907.02(A)(1)(b). Count Nine alleged that in 1993 or 1994, as part of a continuing course of criminal conduct, appellant committed a felonious sexual penetration of D.E., a child under thirteen years old, in Brown County, a violation of former R.C.2907.12(A)(1)(b). Former R.C. 2907.12(A)(1)(b) was effective at the time of the alleged offense. Count Ten alleged that in 1996 or 1997, appellant had committed corruption of a minor in Clermont County, a violation of R.C. 2907.04.
On February 23, 1998, appellant filed a motion for discovery pursuant to Crim.R. 16(B), and a request for a bill of particulars pursuant to Crim.R. 7(E). Appellant also filed a motion to suppress the statement he made to Dep. Creighton.
On April 3, 1998, the trial court held a suppression hearing. Dep. Creighton testified for the state, and appellant testified on his own behalf. Appellant's recorded statement was played, and the trial court was given a transcribed copy of the statement. Appellant contended that he was under significant stress and that he did not fully understand his rights or Dep. Creighton's questions. Appellant asserted that he was confused and incorrectly answered some of Dep. Creighton's questions.
The trial court denied appellant's motion. The trial court found that the information included in the statement and the circumstances of the statement were not unfairly prejudicial to appellant. The trial court found that although appellant may have been under stress at the interview, this was to be expected, and such stress should not make a statement unknowing or involuntary. The trial court found that the interview did not take place in a custodial setting, and that appellant had voluntarily waived his rights, even though Dep. Creighton was under no obligation to give a Miranda warning. The trial court found that appellant had understood the questions, as he admitted to some offenses but denied others.
On April 8, 1998, the state filed a bill of particulars alleging that, as a continuing course of criminal conduct, from 1990 to 1997 appellant had engaged in sexual conduct with D.E. until she was fifteen years old. Specifically, the bill of particulars alleged that Counts One through Four and Count Six occurred at Moler Trailer Park in Mt. Orab, Brown County, Ohio. Counts Five, Seven, Eight, and Ten were alleged to have taken place at Lori Lane Apartment Complex in Amelia, Clermont County, Ohio. Count Nine was alleged to have occurred at Hi-View Estates Mobile Home Park in Nicholsville, Clermont County, Ohio.
On April 8, 1998, the state filed a motion to amend Counts Five, Seven and Eight of the indictment to substitute the dates "1995/1996" for "on or about 1994 through April 1, 1995." The state asserted that the amendments would make the dates consistent with the evidence to be presented at trial and with the specification that D.E. was under thirteen years of age at the time of the offenses.
On May 5, 1998, appellant filed a motion to compel grand jury transcripts and to prohibit any amendment of the indictment. Appellant argued that it was necessary to determine why the state was seeking to amend the indictment. Appellant opposed any amendments in the indictment, asserting that it could impact any alibi defense and alter the severity of his crimes. Appellant argued that if the indictment was amended, he should be allowed to review the grand jury transcripts to review for favorable evidence.
On May 12, 1998, the trial court held a hearing on these motions. After hearing arguments from counsel, the trial court overruled appellant's motion to compel the grand jury transcripts. The trial court ruled that appellant had failed to show particularized need for the grand jury testimony as required by Crim.R. 6(E). The trial court granted the state's motion to amend the dates in Counts Five, Seven and Eight of the indictment. The trial court found that the amendments would only correct clerical errors, not change the crimes, identities of persons, or locations alleged in the indictment.
On September 8, 1998, the state filed an amended bill of particulars. Two weeks before this date, the prosecutor had driven with D.E. to the locations where appellant's offenses were alleged to have occurred. It was then determined that the wrong trailer park and apartment complex addresses had been included in the original bill of particulars. In the amended bill of particulars, Counts One through Four and Count Six were alleged to have occurred at Moler Trailer Park, as originally alleged. The location in Counts Five, Seven, Eight, and Ten was changed to Prince Hamlet Apartments at 3420 State Route 132 in Clermont County, Ohio. Count Nine was amended to allege that the offense had occurred at Forest Creek Mobile Home Park on State Route 222 in Clermont County, Ohio.
Trial commenced on September 16, 1998. The state presented D.E., her mother, Gail, and Dep. Creighton as witnesses. The state played Dep. Creighton's recorded interview with appellant. The jury was provided with a transcribed copy of the interview.
The state's evidence at trial established that appellant met D.E.'s parents at church in 1990. At this time, appellant's wife, Goldie Baker, was pregnant with their first child. Soon after, Goldie had a daughter, and D.E., then eight, began helping Goldie with the child. D.E. would visit every other weekend, staying overnight at appellant's trailer at Moler Trailer Park. D.E. slept on the couch in the living room.
One night soon after D.E. had begun staying overnight, appellant asked if she would like to sleep in bed with Goldie and him. Apparently, it was very cold in the living room that night. D.E. agreed to sleep in the bed, with appellant sleeping between his wife and D.E. D.E. wore to bed the jeans and shirt she had on that day.
That night, D.E. was awakened by appellant touching her. Appellant had removed her jeans and underwear, and was rubbing her vaginal area. She told appellant to stop, and he did so. D.E. replaced her underwear and jeans, but appellant then attempted to remove the clothing. D.E. told appellant not to do so, and appellant rolled over towards his wife. D.E. was afraid to leave the bed, and she rolled over away from appellant.
D.E. did not tell anyone about appellant's conduct because she was afraid of what had happened. She continued to stay at appellant's trailer every other weekend so that she could play with the baby, and because she wanted to be away from her parents, who were apparently arguing and fighting a great deal. D.E. testified that the abuse by appellant continued during this time, with appellant touching her at almost every visit. Each time, appellant would wait until everyone was asleep and then go into the living room where D.E. was sleeping.
When D.E. was eleven years old, appellant and Goldie moved to Prince Hamlet Apartments on State Route 132 in Clermont County. D.E. continued to visit almost every other weekend. As before, appellant would molest her on nearly every visit. At Prince Hamlet Apartments, though, appellant also began to insert his finger in D.E.'s vagina and perform oral sex.
Within a few months, appellant and Goldie again moved, this time to Forest Creek Trailer Park on State Route 222, between State Route 125 and Nicholsville, Ohio. D.E. continued to visit, and appellant continued his abuse. At this time, D.E. told a friend what was happening, but she was still afraid to tell her family.
D.E. testified that when she was eleven years old, appellant attempted sexual intercourse. D.E. was sleeping on a living room seat when she was awakened by appellant. Appellant had removed her jeans and underwear and was standing before her naked. Appellant had an erection and was attempting to insert his penis into her vagina. D.E. told appellant to stop, and appellant left the room and went back to his bedroom.
After D.E. was thirteen years old, she rarely saw appellant. Appellant and Goldie did not come to her parents' house as often and did not ask if D.E. would visit. When they did ask, D.E. would refuse. On one occasion in March 1996, when D.E. was fourteen, she agreed to visit with appellant's family. Her parents were fighting and she could not otherwise leave her home. Appellant was still living in Forest Creek Trailer Park. That night, appellant again molested D.E., touching her vaginal area and inserting his finger in her vagina.
In April 1996, D.E. told a friend what appellant had done. This friend convinced D.E. to tell her parents. D.E. had not told her family earlier because early into the molestation appellant had threatened her and convinced her that she would get in trouble if anyone knew of his conduct.
After D.E. told her mother, Gail, about the abuse, Gail would not allow appellant to have any contact with D.E. Gail failed to inform the authorities because she thought that nothing could be done because of a "time limit" on such offenses. She did tell her pastor at church, and she sought counseling through her church.
In December 1997, there was a report that appellant had molested D.E. It was after this report that Dep. Creighton began his investigation. D.E. testified that after the initial complaint was made, appellant approached her in church to tell her that he was sorry for what he had done.
During Dep. Creighton's testimony, the state introduced the taped interview with appellant. The court offered to give limiting instructions on the tape because it included references to complaints by D.B. and appellant's prior conviction for breaking and entering. Defense counsel stated that such an instruction was not necessary because he was contesting the validity of the taped confession and D.E.'s account of the crimes. Defense counsel stated that appellant had never lived where either victim had stated the abuse had occurred, and he would use this inconsistency to challenge the credibility of the complaints against appellant.
At the close of the state's case-in-chief, appellant made a Crim.R. 29 motion for acquittal. The trial court granted the motion as to Counts Six and Ten.
Appellant presented as witnesses his sisters, Patty White and Annette Baker, and his mother, Wanda Baker. Appellant testified on his own behalf. Appellant and his witnesses testified that appellant had a good reputation in the community and that he interacted appropriately with children.
Appellant sought to demonstrate that he was nervous with authorities and that he had problems communicating with others, seeking to show that his confessions to Dep. Creighton were not credible. Appellant attempted to introduce a videotape of him playing with his children, as well as testimony concerning his alleged nervousness with authority. The trial court refused to admit this evidence, finding that it was not relevant to the issues in the case.
At the close of the appellant's presentation, the parties presented their closing arguments. In the state's closing argument, the prosecutor attacked appellant's credibility, calling appellant a liar and asserting that appellant's defense that his confession was not voluntary was predicated upon lies. The prosecutor argued that appellant lied because he was guilty, and that appellant had perjured himself. Appellant's counsel attempted to address the state's comments by arguing that appellant had been nervous, and that appellant had not committed the charged crimes. Defense counsel also argued that the state had not met its burden of proof because there had been early disputes concerning where the offenses had occurred.
On September 18, 1998, the jury returned its verdict, finding appellant guilty of Counts Two through Five and Seven through Nine. Appellant was found not guilty of Count One. On September 25, 1998, the trial court filed its judgment entry on the jury verdict and ordered a pre-sentence investigation report.
On October 28, 1998, the trial court sentenced appellant. On each of Counts Two through Five, appellant was ordered to serve two years of incarceration, with the sentences to be served consecutively. Appellant was sentenced to serve six to twenty-five years of incarceration on each of Counts Seven and Nine, and three to fifteen years of incarceration on Count Eight, with the sentences to be served consecutively. The sentences for Counts Seven through Nine were to be served concurrently with those for Counts Two through Five. The trial court also held a sexual predator classification hearing, and adjudicated appellant to be a sexual predator.
Appellant appeals, raising fourteen assignments of error. For purposes of clarity, we will address some of the assignments of error out of order.
Assignment of Error No. 1:
 THE COURT ERRED WHEN IT DENIED BAKER'S MOTION TO SUPPRESS THE STATEMENT HE MADE TO INVESTIGATOR CREIGHTON.
 In his first assignment of error, appellant contends that his statement admitting to five of the allegations made against him was not made voluntarily, and that the trial court should have suppressed this statement. Appellant asserts that the statement was given as a result of improper inducements by Dep. Creighton, and that the environment in which the statement was given was unduly coercive.
In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to evaluate the credibility of witnesses and resolve questions of fact. State v.Clay (1973), 34 Ohio St.2d 250, 251. In reviewing the decision of a trial court on a motion to suppress, the appellate court must accept the findings of fact if supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 593, appeal dismissed, 69 Ohio St.3d 1488. Accepting such facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. Id.
Appellant does not contend that the interview with Dep. Creighton was a custodial interrogation which required that Dep. Creighton inform appellant of his rights under Miranda v. Arizona
(1966), 384 U.S. 436, 475, 86 S.Ct. 1602. Dep. Creighton did not place appellant under arrest, nor did he impair appellant's liberty in any way. In fact, appellant was initially informed that he did not have to do the interview and that he could leave at any time. At the conclusion of the interview, appellant left without any resistance from Dep. Creighton.
Nonetheless, Dep. Creighton took the cautious measure of reading appellant his Miranda rights, rights which appellant then waived. Appellant now claims he did not waive these rights and that his statements were made involuntarily. In determining whether appellant did, in fact, make a voluntary statement, this court must consider a number of factors, including: appellant's age and mentality; appellant's prior criminal experience; the length, intensity, and frequency of the interview; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. See State v. Brewer (1990), 48 Ohio St.3d 50,58; State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, vacated in part on other grounds (1978),438 U.S. 911, 98 S.Ct. 3147.
A confession is involuntary and violative of the United States and Ohio Constitutions if it is the product of "coercive police activity." State v. Loza (1994), 71 Ohio St.3d 61, 66, quoting Colorado v. Connelly (1986), 479 U.S. 157, 167,107 S.Ct. 515, 522. Thus, police may not make promises regarding the treatment the defendant will receive from the court. See Loza,71 Ohio St. 3d at 67. Admonitions to tell the truth are neither threats nor promises and are permissible. State v. Wiles (1991),59 Ohio St.3d 71, 81. Promises that a defendant's cooperation might be considered in the disposition of the case, or that a confession would be helpful, will not invalidate an otherwise legal confession. Loza, 71 Ohio St.3d at 67, citing Edwards,49 Ohio St. 2d at 40-41.
We cannot find that appellant's statement was given involuntarily. Even though appellant was not under arrest or in a custodial environment, Dep. Creighton read appellant his Miranda
rights and showed him a form containing these rights. Appellant had prior contact with law enforcement, and he admitted that he could read and that he had a high school education. Dep. Creighton gave appellant more than one opportunity to state that he did not understand his rights or the questions asked, but appellant stated that he was choosing to waive these rights and gave no indication that the questions confused him. Dep. Creighton informed appellant at the beginning of the interview that appellant was free to leave at any time. Appellant responded that he wished to resolve the matter, thus demonstrating a conscious choice to stay and be interviewed by Dep. Creighton.
Appellant asserts that he was nervous and that he misunderstood many of Dep. Creighton's questions. Any interview by a law enforcement officer, whether custodial or otherwise, may cause the interviewee some amount of nervousness. Such nervousness, by itself, will not invalidate an otherwise voluntarily given statement. Even if appellant was nervous, he demonstrated an understanding of the purpose of the interview, the allegations made against him, and the questions asked by Dep. Creighton. As evidence of this, appellant denied some of the allegations made by D.E., but admitted to others. Dep. Creighton gave appellant the opportunity to explain his answers, and appellant chose to do so on more than one occasion.
We find that appellant's statement was given voluntarily. The trial court did not err in denying appellant's motion to suppress. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 7:
 THE COURT ERRED WHEN IT REFUSED TO CONDUCT AN IN CAMERA REVIEW OF THE GRAND JURY TESTIMONY OF [D.E.].
In his seventh assignment of error, appellant contends that the trial court erred by finding that appellant had not demonstrated a particularized need warranting an in camera
review of grand jury transcripts. Appellant asserts that such a review might have revealed possibly exculpatory evidence or evidence tending to establish an alibi.
An accused is not entitled to see grand jury transcripts unless the ends of justice require it and the defendant demonstrates a "particularized need" for disclosure which outweighs the need for secrecy of grand jury proceedings. Statev. Benge (1996), 75 Ohio St.3d 136, 145, citing State v. Greer
(1981), 66 Ohio St.2d 139, paragraph two of the syllabus. "Particularized need" will be found where the circumstances "reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial." Benge,75 Ohio St. 3d at 145. The determination of whether the defendant has shown the requisite "particularized need" is a matter left to the trial court's discretion. Id.
Appellant sought D.E.'s grand jury testimony in an attempt to determine whether there were inconsistencies in her testimony. Appellant based his request upon the state's amendment of some dates included in the indictment. However, the state's motion to amend the indictment demonstrates otherwise. The state's motion specifically states that the amendments were to correct internal inconsistencies due to a clerical error which had included the wrong years in Counts Five, Seven, and Nine. The amendments made the dates consistent with the evidence to be presented at trial and with the specification alleged in these counts, that the victim was less than thirteen years old at the time of the offense. Thus, it is clear that the original inconsistency was not due to D.E.'s testimony before the grand jury.
We find that the trial court was correct in finding that appellant failed to show a particularized need for any review of the grand jury transcript. Accordingly, appellant's seventh assignment of error is overruled.
Assignment of Error No. 4:
 BAKER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO OBJECT TO, AND DECLINED LIMITING INSTRUCTIONS ON, THAT PORTION OF BAKER'S STATEMENT WHICH REFERRED TO [D.B.].
In his fourth assignment of error, appellant contends that his trial counsel should have attempted to exclude that portion of his interview with Dep. Creighton which concerned allegations by D.B. that appellant had sexually abused her. Appellant asserts that this portion of the interview was so inflammatory and prejudicial that trial counsel should have either objected to that portion of the interview or sought a limiting instruction.
To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, a defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; Statev. Mills (1992), 62 Ohio St.3d 357, 370, rehearing denied,63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227, 112 S.Ct. 3048. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1997), ___ U.S. ___,118 S.Ct. 376.
Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, id. at 142, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland,466 U.S. at 689, 104 S.Ct. at 2065; State v. Lytle (1976), 48 Ohio St.2d 391,397, vacated in part on other grounds, Lytle v. Ohio (1978),438 U.S. 910, 98 S.Ct. 3135. Thus, it is not the role of the appellate court to second guess the strategic decisions of trial counsel. Where trial tactics prove unsuccessful, an appellant is not allowed to later claim that such tactics were inappropriate.State v. Carter (1995), 72 Ohio St.3d 545, 558, certiorari denied (1995), 516 U.S. 1014, 116 S.Ct. 575. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516,524-525, certiorari denied, Cook v. Ohio (1994),510 U.S. 1040, 114 S.Ct. 681.
At trial, the trial court twice inquired of defense counsel whether a limiting instruction should be given concerning that portion of the interview concerning allegations made by D.B. Both times, defense counsel refused the instruction. The second time, defense counsel informed the court that his intent was to use this portion of the interview to discredit the charges against appellant. Defense counsel contended that D.B.'s allegations were not trustworthy for the same reason appellant challenged D.E.'s charges, namely, that both girls claimed that appellant had resided somewhere he, in fact, had never resided. Appellant argued at trial that this fact demonstrated the falsity of the charges.
It is clear that defense counsel's decision to not object to or seek any limiting instruction on the contested portion of the interview was a tactical decision made in an attempt to discredit D.E.'s testimony. We cannot say that trial counsel was ineffective for making such a choice. A substantial part of appellant's defense was that the exact locations of the alleged abuse could not be established. Defense counsel informed the trial court that he intended to use that part of the interview concerning D.B. to demonstrate this fact.
We cannot say that defense counsel was ineffective for not objecting to or seeking a limiting instruction on the contested portion of Dep. Creighton's interview with appellant. Accordingly, appellant's fourth assignment of error is overruled.
Assignment of Error No. 8:
 THE COURT ERRED WHEN IT REFUSED TO PERMIT [DEP.] CREIGHTON TO COMMENT ON DEFENDANT'S DEMEANOR.
Assignment of Error No. 9:
 THE COURT ERRED WHEN IT REFUSED TO PERMIT BAKER TO INTRODUCE A VIDEOTAPE OF HIM INTERACTING WITH HIS CHILDREN.
Assignment of Error No. 10:
 THE COURT ERRED WHEN IT EXCLUDED EVIDENCE REGARDING BAKER'S TENDENCY TO BECOME NERVOUS IN THE PRESENCE OF AUTHORITY.
Assignment of Error No. 11:
 THE COURT ERRED WHEN IT REFUSED TO PERMIT BAKER'S SISTER, ANNETTE BAKER, TO TESTIFY CONCERNING THE EFFECTS SEIZURES HAD ON BAKER'S ABILITY TO COMMUNICATE.
In his eighth, ninth, tenth, and eleventh assignments of error, appellant contends that the trial court erred in excluding character evidence that appellant asserts would have tended to discredit his confession and the charges against him. In the ninth assignment of error, appellant contends that the videotape he sought to introduce would have established that he interacted appropriately with children. In the eighth, tenth and eleventh assignments of error, appellant asserts that the testimony he sought to introduce would have helped to establish that his statements to Dep. Creighton were not made knowingly, intelligently, or voluntarily.
Evid.R. 401 provides:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
The threshold of admissibility is a low one, reflecting the policy favoring the admission of relevant evidence for the trier of fact to weigh. State v. Morgan (1986), 31 Ohio App.3d 152,154. Generally speaking, the question of whether evidence is relevant is ordinarily not one of law, but rather it is one which the trial court can resolve based upon common experience and logic. State v. Lyles (1989), 42 Ohio St.3d 98, 99. Thus, whether to allow or exclude relevant evidence is left to the trial court's sound discretion. Evid.R. 104(A); State v.Heinish (1990), 50 Ohio St.3d 231, 239; State v. Sage (1987),31 Ohio St.3d 173, 180.
Otherwise relevant evidence may be excluded when the probative value of such evidence "is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B); State v. Shields (1984),15 Ohio App.3d 112, 114. When the proffered evidence is of marginal probative value and concerns only a collateral matter, the trial court may exclude such evidence under Evid.R. 403. Id. A trial court's decision to exclude such evidence will be reversed only if it is found that the trial court abused its discretion, and that the decision resulted in material prejudice to the appealing party. State v. Williams (1982), 7 Ohio App.3d 160, 162.
Evidence of an accused's character trait is admissible when the character trait to be proven is pertinent to the issues of the case. Evid.R. 404(A)(1). Where evidence of character is admissible, proof of the character trait may be made by testimony as to reputation in the community or by lay opinion. Evid.R. 405(A). When lay opinion testimony is offered, it must concern the personal opinion of the witness and be based upon a personal acquaintance with the accused. State v. Ambrosia (1990),67 Ohio App.3d 552, 562, appeal dismissed (1991),58 Ohio St.3d 701.
With regard to the videotape appellant sought to introduce, appellant's stated objective was to demonstrate that, as a character trait, he acted appropriately with children. The trial court excluded the videotape, finding that the video was not among the proper methods of proving a "character trait" listed in Evid.R. 405. Although appellant's actions with children were at issue, the videotape was not relevant to the charges against appellant. The charges against appellant did not concern his interactions with his own children. Furthermore, there was no guarantee this videotape was unbiased or trustworthy, as appellant did not show when or where the tape was made or for what purpose. The trial court properly found that the tape should be excluded under Evid.R. 401 and 403(B).
With regard to the testimony concerning appellant's behavior, we find that the trial court did not err in excluding this evidence. Appellant first argues that the trial court should not have allowed Dep. Creighton to testify about whether he believed that appellant was intimidated by authority. Prior to this question, it had already been established that Dep. Creighton did believe that appellant was somewhat nervous in the interview, but Dep. Creighton felt that appellant understood his rights and the purpose of the interview, and that appellant did not display any signs of intimidation. The trial court is not required to admit evidence which is cumulative to that already before the jury. Evid.R. 403(B).
Second, appellant challenges the court's rulings which excluded testimony concerning appellant's nervousness and possible difficulty communicating with others. Appellant contends that testimony by his sister, Patty White, that he tends to be nervous was relevant to attacking the credibility of his confession. Appellant was attempting to introduce evidence of a supposed general character trait from a witness who was not present at the interview between Dep. Creighton and appellant. Although such evidence of character may be admissible through opinion testimony, Evid.R. 404(A)(1) and 405(A), appellant had previously established that he was nervous at the interview through the testimony of Dep. Creighton. The trial court was not required to admit such cumulative evidence. Evid.R. 403(B).
Appellant asserts that the trial court should have allowed testimony by his sister, Annette Baker, concerning the effects that alleged seizures have had upon appellant's ability to communicate. The testimony was not relevant because appellant did not contend he had difficulty in communicating his thoughts to Dep. Creighton. Throughout the suppression hearing and the trial, appellant argued that he had answered some questions incorrectly because he did not understand the questions, not because he had difficulty answering questions. Appellant's own testimony did not include any mention of seizures. We find that the testimony appellant sought to elicit was not relevant to the issues presented at trial. Evid.R. 401.
The trial court did not err in excluding appellant's proposed character evidence. Accordingly, appellant's eighth, ninth, tenth, and eleventh assignments of error are overruled.
Assignment of Error No. 5:
 THE COURT ERRED WHEN IT FAILED TO GRANT A MISTRIAL OR GIVE INSTRUCTIONS TO DISREGARD THE STATE'S REPEATED ACCUSATIONS DURING CLOSING ARGUMENT THAT BAKER WAS LYING.
In his fifth assignment of error, appellant contends that the prosecutor committed misconduct by repeatedly making comments in closing arguments that appellant was a liar and guilty, and that appellant had committed perjury. Appellant asserts that due to this misconduct, the trial court should have either declared a mistrial or given limiting instructions to the jury.
Because these matters were not objected to at trial, the issue is waived unless the errors rise to the level of "plain error." State v. Nicholas (1993), 66 Ohio St.3d 431, 435-436. Under plain error analysis, we must determine whether the substantial rights of the accused are so severely affected as to undermine the fairness of the guilt-determining process. Crim.R. 52(B);[2] State v. Swanson (1984), 16 Ohio App.3d 375, 377. It must appear that, but for the error, the result of the trial clearly would have been otherwise and that to not correct the error would be a clear miscarriage of justice. State v. Bock
(1984), 16 Ohio App.3d 146, 150.
The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of the accused. Statev. White (1998), 82 Ohio St.3d 16, 22, rehearing/reconsideration denied (1998), 82 Ohio St.3d 1469, 1470; State v. Smith (1984),14 Ohio St.3d 13, 14. Even if a prosecutor's statements during closing arguments are improper, reversal based upon those statements is warranted "only if [they] `permeate the entire atmosphere of the trial.'" State v. Tumbleson (1995), 105 Ohio App.3d 693,699, quoting United States v. Warner (C.A.6, 1992),955 F.2d 441, 456, certiorari denied (1992), 505 U.S. 1227,112 S.Ct. 3050. In reviewing the record, it must be remembered that both the defense and prosecution are given wide latitude in their arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." Tumbleson,105 Ohio App.3d at 699, quoting State v. Lott (1990), 51 Ohio St.3d 160, 165, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591. If the prosecutor does state an opinion, it must be based upon the evidence presented and not personal beliefs. State v. Watson
(1991), 61 Ohio St.3d 1, 10. In examining the prosecutor's arguments for possible misconduct, we must review the argument as a whole, not in isolated parts, and we must examine the argument in relation to that of opposing counsel. See State v. Moritz
(1980), 63 Ohio St.2d 150, 157-158.
In the present case, we are compelled to find that the prosecutor's remarks during closing arguments went beyond the wide latitude given to counsel when making arguments to the jury. The prosecutor argued that appellant's attempt to discredit his statements in the interview was nothing but a lie, and paraphrased appellant's defense as, "Believe me right now when I tell you on December 22 that I lied." The prosecutor asserted that appellant's defense was solely based upon a lie. The prosecutor then went on to state that appellant committed perjury by denying that he had apologized to D.E. at church and by claiming that he was confused at the interview with Dep. Creighton. The prosecutor concluded his attacks on appellant by arguing:
 Again, ladies and gentlemen, innocent people don't lie. Guilty people, like Roger Baker, do. They lie to avoid prosecution. * * * they lie to avoid conviction. That is the reason he comes in here and takes the stand and just bald-face lies and recants his confession. They lie to save their own necks, and that is exactly what the defendant, Roger Baker, has done.
These remarks by the prosecutor comprise nearly one half of the prosecutor's closing argument. We strongly disapprove of both the length and excessiveness of these remarks. Such extreme comments are never necessary. During closing arguments, counsel are to present to the jury their interpretation of the evidence, not personal attacks upon the defendant or witnesses.
Nonetheless, however strongly we disapprove of the prosecutor's remarks, we must find that appellant's rights were not so prejudiced as to deprive him of a fair trial. Defense counsel addressed many of the disparaging remarks made by the prosecutor, and presented to the jury the inconsistencies in the state's evidence concerning where the offenses were alleged to have occurred. In light of D.E.'s testimony, as well as appellant's admissions, we cannot say that, but for the prosecutor's remarks, the outcome of the case would have been different.
We conclude that the prosecutor's remarks did not so permeate the atmosphere of the trial so as to deprive appellant of a fair trial. Accordingly, appellant's fifth assignment of error is overruled.
Assignment of Error No. 6:
 DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE STATE'S REPEATED ACCUSATIONS THAT BAKER WAS LYING CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.
In his sixth assignment of error, appellant contends that his trial counsel was ineffective for not objecting to the state's closing argument. Appellant asserts that such ineffective counsel deprived him of a fair trial.
As noted above, to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances, and that this deficiency resulted in substantial prejudice at trial.Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Mills,62 Ohio St. 3d at 370. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. Bradley,42 Ohio St.3d at 136, paragraph three of the syllabus.
We find that appellant's counsel was less than competent for failing to object to the lengthy and excessive personal attacks by the prosecutor in his closing statement. But, as noted in the previous assignment of error, in light of the evidence against appellant, including D.E.'s testimony and appellant's confession, we cannot state that appellant was substantially prejudiced by this lack of competence.
Even had appellant's counsel objected or received a limiting instruction, there was substantial evidence before the jury by which the jury could find appellant guilty of the charged crimes. Accordingly, appellant's sixth assignment of error is overruled.
Assignment of Error No. 13:
 BAKER WAS DEPRIVED OF A FAIR TRIAL BECAUSE OF THE VARIANCE BETWEEN THE BILL OF PARTICULARS AND THE PROOF AT TRIAL.
In his thirteenth assignment of error, appellant contends that he was prejudiced by the differences between the bill of particulars and the evidence presented at trial. Appellant asserts that this difference prevented him from being able to present an effective defense.
Crim.R. 7(E) provides:
 When a defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires.
 After a bill of particulars has been filed by the state, the state may amend that bill of particulars so long as that amendment does not prejudice the defendant. State v. Vitale (1994), 96 Ohio App.3d 695, 700-701, appeal dismissed (1995), 71 Ohio St.3d 1443. Where the amendment does not affect the elements of the offense charged or the name or identity of the offense, the defendant will not be prejudiced. State v. Ensman (1991), 77 Ohio App.3d 701, 704, appeal dismissed (1992), 63 Ohio St.3d 1409.
The state filed the original bill of particulars on April 8, 1998. In this bill of particulars, it was alleged that the offenses alleged in Counts Five, Seven, and Eight had occurred at Lori Lane Apartment Complex in Clermont County. It was also alleged that the offense in Count Nine had occurred at Hi-View Estates Mobile Home Park in Clermont County. In fact, appellant had not lived at either location.
When this was discovered by the state, the state filed an amended bill of particulars on September 8, 1998, ten days before trial. The amended bill of particulars alleged, concerning Counts Five, Seven, Eight and Ten, that appellant had lived at Prince Hamlet Apartments in Clermont County. The amended bill of particulars also alleged, concerning Count Nine, that appellant had lived at Forest Creek Trailer Park. The amended bill of particulars was consistent with the testimony at trial.
Appellant did not suffer any prejudice by these amendments in the bill of particulars. The exact location of appellant's residence at the time of the offenses is not an element of the crimes charged. That D.E. believed that appellant had lived at a different location would go to her credibility, not the validity of the indictment against appellant or the bill of particulars, neither of which were evidence. Furthermore, the amendments were filed ten days before trial, sufficient time for appellant to be made aware of the state's expected proof at trial.
We find that the state's evidence at trial was consistent with the amended bill of particulars filed by the state prior to trial. Accordingly, appellant's thirteenth assignment of error is overruled.
Assignment of Error No. 12:
 THE COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST BAKER THAT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 In his twelfth assignment of error, appellant contends that the state failed to present sufficient evidence to support his conviction. Appellant also asserts that his conviction was against the manifest weight of the evidence.
Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386, rehearing/reconsideration denied, 79 Ohio St.3d 1451. In this inquiry, the appellate court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). Thus, the court, after viewing the evidence in a light most favorable to the prosecution, must conclude whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Smith
(1997), 80 Ohio St.3d 89, 113, rehearing/reconsideration denied,80 Ohio St.3d 1471, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
In the present case, we find that the state did present sufficient evidence to support a finding that each essential element of the charged crimes had been proven. Not only did the state present D.E., the victim, as a witness, the state also introduced the taped interview in which appellant confessed to five of the charged crimes. If D.E.'s testimony and appellant's confession are believed, the state presented evidence sufficient to find that appellant committed the alleged offenses.
Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997), 78 Ohio St.3d 380,386-87, rehearing/reconsideration denied (1997), 79 Ohio St.3d 1451. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v. Florida
(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218. In taking on this role,
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175. A jury verdict will not be disturbed on appeal if reasonable minds could arrive at the conclusion reached by the jury. State v.Fields (1995), 102 Ohio App.3d 284, 287.
Upon a thorough review of the record, we cannot say that the jury clearly lost its way in finding appellant guilty. The state presented evidence as to each element of the charged crimes. Appellant's challenge to the credibility of the state's evidence concerned the voluntariness of his statements to Dep. Creighton and the early confusion concerning the exact residences where the offenses occurred. Even had the state failed to initially determine in what apartment complex or trailer park appellant lived years ago, the state cured this confusion. Prior to trial, D.E. personally identified the complexes where the offenses had occurred, thus establishing that the offenses had occurred in Brown and Clermont counties.
In addition, the state presented D.E. as a witness to testify about appellant's offenses. The state introduced appellant's taped statement admitting to some of the offenses. We cannot say that the jury necessarily lost its way in finding D.E. more credible than appellant. Appellant's conviction was not against the manifest weight of the evidence.
We find that appellant's conviction was supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, appellant's twelfth assignment of error is overruled.
Assignment of Error No. 14:
 AN ACCUMULATION OF ERRORS BY THE TRIAL COURT DENIED BAKER HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
In his fourteenth assignment of error, appellant contends that all of the errors asserted in the prior assignments of error had the cumulative effect of denying him a fair trial. In light of our dispositions of the above assignments of error, we find that this assignment of error is without merit. Accordingly, appellant's fourteenth assignment of error is overruled.
Assignment of Error No. 2:
 THE COURT ERRED WHEN IT CLASSIFIED BAKER AS A SEXUAL PREDATOR IN THAT R.C. CHAPTER 2950 IS UNCONSTITUTIONAL.
In his second assignment of error, appellant contends that R.C. Chapter 2950, Ohio's Megan's Law, is contrary to ArticleI, Section 1, of the Ohio Constitution. Appellant cites Statev. Williams (Jan. 29, 1999), Lake App. No. 97-L-191, unreported, for the proposition that R.C. Chapter 2950 unreasonably interferes with appellant's rights to life, liberty, and property.
In State v. Dickens (Aug. 2, 1999), Clermont App. No. CA98-09-075, unreported, we addressed this issue and determined that, contrary to Williams, R.C. Chapter 2950 is not violative of the Ohio Constitution. Relying extensively upon State v. Cook
(1998), 83 Ohio St.3d 404, this court found that the statute bears a real and substantial relation to the public health, safety, morals, and general welfare, and that the statute is neither unreasonable nor arbitrary. Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE COURT ERRED WHEN IT CLASSIFIED BAKER AS A SEXUAL PREDATOR IN THAT THE CLASSIFICATION IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
In his third assignment of error, appellant contends that the state failed to provide sufficient evidence that he is a sexual predator. Appellant argues that the trial court failed to find factors indicating a tendency towards recidivism.
Pursuant to R.C. 2950.09(C)(2)(b), a determination that an offender is a sexual predator must be supported by clear and convincing evidence. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. While clear and convincing evidence is "more than a mere preponderance of the evidence," it is less than evidence "beyond a reasonable doubt." State v. Danby
(1983), 11 Ohio App.3d 38, 41, citing Cross, 161 Ohio St. at 477.
In the context of a challenge to the sufficiency of the evidence,
 "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the [judgment] as a matter of law. * * * In essence, sufficiency is a test of adequacy.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 386, rehearing/reconsideration denied, 79 Ohio St.3d 1451. When the evidence pertains to specific statutory findings which the trial court must make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court abused its discretion by deviating from the statutory criteria. See In re William S. (1996), 75 Ohio St.3d 95, 99.
We must review the record to determine whether appellant presented evidence sufficient to meet its burden of production: clear and convincing evidence that the defendant is a sexual predator. In sexual predator adjudications, this review focuses on whether evidence was presented relating to the factors listed in R.C. 2950.09(B)(2).[3] Neither party to a sexual predator adjudicatory hearing is required to present new evidence or call and examine witnesses. All that is required is that the parties are given the opportunity to do so. R.C. 2950.09(B)(1).
After evidence is presented, the trial court is required to consider the factors listed in R.C. 2950.09(B)(2) in making its determination. R.C. 2950.09(C)(2)(b). In reviewing these factors and any other relevant characteristics under R.C. 2950.09(B)(2)(j), the trial court may look into the defendant's past behavior. State v. Naegele
(Jan. 12, 1998), Clermont App. No. CA97-04-043, unreported, at 2, affirmed, 84 Ohio St.3d 19. The trial court is not required to find that evidence was presented to support a majority of the factors listed in R.C. 2950.09(B)(2). State v. Fugate
(Feb. 2, 1998), Butler App. No. CA97-03-065, unreported, at 7. In fact, the trial court may rely upon one factor more than another, depending upon the circumstances of the case. State v. Bradley (June 19, 1998), Montgomery App. Nos. 16662 and 16664, unreported. Furthermore, a single conviction may support a finding that a defendant is a sexual predator in certain cases. See State v. Nicholas (Apr. 6, 1998), Warren App. Nos. CA97-05-045, et. al., unreported, affirmed, 84 Ohio St.3d 20.
At appellant's classification hearing, the state relied upon the evidence presented at trial, as well as a pre-sentence investigation report and a psychological evaluation prepared before sentencing. Based upon this evidence, the trial court found that appellant was significantly older than the victim at the time the offenses occurred. The trial court found that the victim was only eight years old when the offenses began, and that the sexual abuse continued for nearly five years. Appellant abused a position of trust with the victim and her family and displayed little remorse for some of his conduct. The trial court determined that appellant did have prior convictions, although these were not for sexually-oriented offenses. It must also be noted that, soon after appellant began molesting D.E., he attempted to prevent her from telling anyone about his conduct.
In light of the evidence against appellant and the substantial findings made by the trial court, we find that the state did present clear and convincing evidence to support the trial court's determination that appellant is a sexual predator. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] Because the victim was a minor at the time of the offenses, and is still a minor, we will use only her initials, "D.E."
[2] Crim.R. 52(B) states:
 Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
[3] R.C. 2950.09(B)(2) states:
 In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offenses or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense, and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.